

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY L. WHITE | CIVIL ACTION |
| versus | NO. 05-3080 |
| BURL CAIN, WARDEN | SECTION: "B" (1) |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE.**

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Johnny L. White, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On September 23, 1999, he was convicted of distribution of heroin in violation of La.Rev.Stat.Ann. § 40:966.[2] On November 29, 1999, he was sentenced to a term of life imprisonment, without benefit of probation or suspension of sentence, with credit for time served.[3] On December 28, 2001, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[4] He then filed with the Louisiana Supreme Court an application for a writ of certiorari and/or review which was denied on February 7, 2003.[5]

On April 5, 2004, petitioner filed with the state district court an application for post-conviction relief.[6] That application was denied on April 12, 2004.[7] He then filed with the Louisiana First Circuit Court of Appeal an application for supervisory writs which was denied on August 9,

---

[2] State Rec., Vol. IV of V, trial transcript, p. 763; State Rec., Vol. I of V, minute entry dated September 23, 1999; State Rec., Vol. I of V, jury verdict form.

[3] State Rec., Vol. IV of V, transcript of November 29, 1999, p. 5; State Rec., Vol. I of V, minute entry dated November 29, 1999.

[4] State v. White, No. 2001-KA-0023 (La. App. 1st Cir. Dec. 28, 2001) (unpublished); State Rec., Vol. V of V.

[5] State v. White, 836 So.2d 87 (La. 2003) (No. 2002-KO-0456); State Rec., Vol. V of V. While that writ application was pending, petitioner returned to the state district court and filed a motion to vacate conviction. State Rec., Vol. V of V. That motion was denied on March 11, 2003. State Rec., Vol. V of V, Order Denying Motion to Vacate Conviction dated March 11, 2003.

[6] State Rec., Vol. V of V.

[7] State Rec., Vol. V of V, Order Dismissing Petition for Post-Conviction Relief dated April 12, 2004.

2004.[8] He next filed with the Louisiana Supreme Court an application for supervisory and/or remedial writs which was denied on June 24, 2005.[9]

On July 7, 2005, petitioner filed this federal application for *habeas corpus* relief.[10] In support of his application, petitioner claims:

1. The trial court erred when it allowed the prosecution to introduce "other crimes" evidence at trial;

2. The trial court erred when it failed to properly instruct the jury; and

3. Petitioner received ineffective assistance of counsel.

## Motion to Stay

Petitioner has filed a motion asking that these federal *habeas corpus* proceedings be stayed.[11] In that motion, petitioner states that wants to review material he procured from the District Attorney's Office in order to determine whether he should supplement and/or amend his federal application.

---

[8] State *ex rel.* White v. State, No. 2004-KW-1059 (La. App. 1st Cir. Aug. 9, 2004) (unpublished); State Rec., Vol. V of V.

[9] State *ex rel.* White v. State, 904 So.2d 734 (La. 2005) (No. 2004-KH-2550); State Rec., Vol. V of V.

[10] Rec. Doc. 3.

[11] Rec. Doc. 5.

In <u>Rhines v. Weber</u>, 125 S.Ct. 1528 (2005), the United States Supreme Court held that, in some circumstances, it is appropriate for a federal district court to stay *habeas corpus* proceedings. <u>Rhines</u> dealt with a petitioner who had filed a "mixed petition" containing both exhausted and unexhausted claims. The petitioner wanted to stay the federal proceedings, return to state court to pursue his unexhausted claims, and then come back to federal court for review of his perfected petition. The Supreme Court noted that the entry of a stay is permissible in such proceedings in limited circumstances but noted:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. Cf. <u>Duncan [v. Walker</u>, 533 U.S. 167, 180 (2001)] ("[D]iminution of statutory incentives to proceed first in state court would ... increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").
>     For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

<u>Rhines</u>, 125 S.Ct. at 1534-35. In the instant case, this Court finds that a stay is not appropriate for the following reasons.

- 4 -

First, to the extent that petitioner seeks to supplement his existing claims, such supplementation is unnecessary and would be ultimately futile. All of petitioner's existing claims concern only legal issues which arose at trial and can be conclusively resolved by a review of the transcripts and record. Nothing in the district attorney's file could possibly strengthen those existing claims.

Second, to the extent that petitioner seeks time to scour the district attorney's files in search of fodder for additional claims, such delay is unwarranted. There is absolutely no reason to believe that review of those files will lead to the discovery of potentially meritorious claims.[12]

The granting of a stay in this case would clearly frustrate the AEDPA's objective of encouraging finality. Accordingly, it is recommended that petitioner's motion to stay these proceedings be denied.

### Timeliness

The state argues that petitioner's federal application is untimely.[13] The state is wrong.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his

---

[12] Moreover, in order to comply with the federal exhaustion requirement, he would have to successfully surmount the procedural obstacles to first asserting any new claims in a second state post-conviction application at this late date, some three years after his conviction became final. There is no reason to believe that he could do so.

[13] Rec. Doc. 6, pp. 3-5.

conviction or sentence becomes "final."[14] Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).

As noted, on February 7, 2003, the Louisiana Supreme Court denied petitioner's writ application challenging the intermediate appellate court's judgment affirming his conviction and sentence.[15] Therefore, pursuant to 28 U.S.C. § 2244(d)(1)(A), petitioner's one-year period for seeking federal *habeas corpus* relief commenced no later than May 8, 2003, when his ninety-day period for filing a petition for a writ of certiorari with the United States Supreme Court expired. See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R. 13(1). Accordingly, petitioner had one year from that date to file a federal application for *habeas corpus* relief, unless that deadline was extended through tolling.

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). Three hundred thirty-two (332) days of petitioner's one-year statute of limitations elapsed prior to being tolled by the filing of his post-conviction application on April 5, 2004. Although that application was denied, tolling continued uninterrupted during the period of appellate review, so long as petitioner sought

---

[14] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable in the instant case.

[15] State v. White, 836 So.2d 87 (La. 2003) (No. 2002-KO-0456); State Rec., Vol. V of V.

such review in a timely manner. See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004). There is no indication in the record that petitioner's related writ applications were untimely filed with either the Louisiana First Circuit Court of Appeal[16] or the Louisiana Supreme Court. Accordingly, the statute of limitations remained tolled from April 5, 2004, until the Louisiana Supreme Court denied the related writ application on June 24, 2005.[17]

At that point, petitioner had thirty-three (33) days of the statute of limitations remaining. Because he filed his federal application on July 7, 2005,[18] a mere thirteen (13) days later, it was timely filed. In light of that fact, the Court will address the merits of petitioner's claims.

Standard of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law

---

[16] In its response, the state argues that petitioner's writ application was not filed with the Louisiana First Circuit Court of Appeal until August 9, 2004, and was therefore untimely. Rec. Doc. 6, p. 4. That is incorrect; the application was *denied,* not filed, on that date. Moreover, petitioner has provided evidence showing that the writ application was mailed to the Court of Appeal on May 4, 2004, Rec. Doc. 7, well before the expiration of his thirty-day deadline. See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3.

[17] State *ex rel.* White v. State, 904 So.2d 734 (La. 2005) (No. 2004-KH-2550); State Rec., Vol. V of V.

[18] Petitioner signed his federal *habeas corpus* application on July 7, 2005. Rec. Doc. 3. That date represents the earliest date that petitioner could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes. Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).

and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

In September 1997, Louisiana State Police Trooper Murphy Paul was working undercover with a task force investigating the distribution of heroin in Louisiana. A confidential informant arranged a meeting between Trooper Paul and the defendant to set up a heroin transaction. The defendant contacted Kenneth Dilosa and set up a sale. The defendant participated in three drug buys with Trooper Paul and Dilosa. After each transaction, Trooper Paul made arrangements to purchase a larger quantity of heroin at the next buy. The instant offense, which was the last drug transaction, occurred in Slidell on November 6, 1997. The sale involved one-half ounce of heroin, which was sold for $3,200.[19]

### "Other Crimes" Evidence

Petitioner claims that the trial court erred when it allowed the prosecution to introduce at trial evidence of other crimes, specifically the two prior heroin transactions for which petitioner was not charged. The state courts rejected that claim.

La. Code Evid. art. 404, in pertinent part, provides:

B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request of the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

On June 14, 1999, the district attorney filed with the state district court a formal notice of the intention to introduce at trial evidence concerning the two prior heroin sales which

---

[19] State v. White, No. 2001-KA-0023, at p. 2 (La. App. 1st Cir. Dec. 28, 2001) (unpublished); State Rec., Vol. V of V.

occurred on September 11 and 23, 1997.[20] A pretrial hearing was held on September 20, 1999, regarding the admissibility of that evidence.[21] At that hearing, Officer Murphy Paul testified that on September 11 he contacted petitioner to purchase a small amount of heroin. Paul met petitioner at a Slidell Texaco station and they drove to Lake Forest Plaza mall to meet Kenneth Dilosa.[22] When they arrived, petitioner took 2.5 grams of heroin from Dilosa and gave it to Paul in exchange for approximately $250. Paul and Dilosa then made arrangements for a future drug deal. On September 23, Paul again met petitioner at the Texaco station and they drove together to the Lake Forest Plaza mall to meet Dilosa. They then went to a Popeye's across the street, where Paul bought two bundles of heroin for approximately $600. Paul and Dilosa then arranged the drug deal which resulted in the instant charge. After reviewing the testimony and evidence, the trial judge ruled that the district attorney would be allowed to introduce at trial evidence regarding the two prior drug transactions.[23]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts merely misapplied state evidence law, his claim is not reviewable in this federal proceeding.

---

[20] State Rec., Vol. I of V.

[21] The transcript of that hearing is included in Vol. I of V of the state court record.

[22] Dilosa was a co-defendant who was tried and convicted with petitioner.

[23] State Rec., Vol. I of V, transcript of September 20, 1999, p. 36.

To the extent that petitioner is arguing that the introduction of the "other crimes" evidence violated his federal constitutional rights, he has failed to demonstrate that he is entitled to *habeas* relief on that basis. The United States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted."). In the instant case, the evidence was not wrongly admitted, in that it was clearly within the ambit of article 404. Moreover, even if the evidence had been inadmissible, it cannot be said to have played a crucial, critical, and highly significant role in petitioner's conviction in light of the limiting instruction given by the trial judge[24] and the overwhelming evidence of petitioner's guilt, including the testimony of Officer Paul and Officer

---

[24] The trial court properly instructed the jury regarding the limited purposes for which that evidence could be considered:

> Evidence that a defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show motive, intent, and absence of mistake or accident, identity, preparation, plan scheme, knowledge, and/or entrapment; and it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
> Remember, the accused are on trial only for the offense charged. You may not find them guilty of this offense merely because they have committed another offense.

State Rec., Vol. IV of V, trial transcript, pp. 742-43.

Richard Horton. Petitioner has not met his burden to demonstrate that the admission of the "other crimes" evidence resulted in a denial of fundamental fairness.

Accordingly, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's claim.

Jury Instructions

Petitioner argues that the trial court failed to give the jury "a complete and comprehensive instruction on the lesser included offense of attempted distribution of heroin ...."[25] The state courts rejected that claim.

The United States Fifth Circuit Court of Appeals has noted:

> [A petitioner challenging the adequacy of jury instructions] faces a extraordinarily heavy burden. Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief. The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of the state court's judgment is even greater than the showing required to establish plain error on direct appeal.
> Before a federal court may grant relief under 28 U.S.C. § 2254 based on alleged error in a state trial court's unobjected to charge, the error must be so egregious as to rise to the level of a constitutional violation or so prejudicial as to render the trial itself fundamentally unfair. It must be established not only that the instruction was undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the fourteenth amendment, and that the ailing instruction by itself so

---

[25] Rec. Doc. 3, supporting memorandum, p. 15.

> infected the entire trial that the resulting conviction violates due process.
>
> In applying these principles to the instructions in [a] case, we pay careful attention to the words actually spoken to the jury, for whether a defendant has been accorded his constitutional rights depends on the way in which a reasonable juror could have interpreted the instruction. And we are mindful that a single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the entire charge.

Tarpley v. Estelle, 703 F.2d 157, 159-60 (5th Cir. 1983) (internal quotation marks, brackets, ellipsis, citations, and footnote omitted); see also Galvan v. Cockrell, 293 F.3d 760, 764-65 (5th Cir. 2002).

In the instant case, petitioner has failed to meet his burden with respect to this claim. He has failed even to demonstrate that the jurors were instructed improperly.

The transcript reflects that the jurors were properly instructed regarding attempted distribution of heroin. After instructing the jury on specific intent[26] and the charge of distribution of heroin,[27] the trial judge further instructed the jury as follows:

---

[26] The trial judge instructed jurors: "Specific criminal intent is that state of mind which exists when the circumstances indicate that the defendant actively desired the proscribed criminal consequence to follow his act or failure to act." State Rec., Vol. IV of V, trial transcript, p. 744.

[27] The trial judge instructed jurors:

> Distribution of heroin: The defendants are charged with distributing heroin. It is unlawful for any person knowingly and intentionally to distribute or possess with the intent to distribute heroin. Distribute means to deliver, whether by physical delivery, administering or subterfuge.
> The state need not prove that the defendants were in actual possession of the heroin. Constructive possession is sufficient to support a conviction. A person found in the area of the heroin may be considered in constructive possession if the illegal substance is the subject of his dominion or control. A person may be deemed to be in joint possession of the heroin if he willfully and knowingly shares with the other person the right to control it.
> I have already given you the definition of general and specific criminal intent. And you are to use this definition in your deliberations.
> Thus, in order to find the defendants guilty as charged, you must find that the

Responsive verdicts: In order to convict the defendant of the offense charged, you must find beyond a reasonable doubt that the State proved every element of distribution of heroin. If you are not convinced that the defendants are guilty of the offenses charged, you must find that the defendants are guilty of a lesser offense, if you are convinced beyond a reasonable doubt that the defendants are guilty of a lesser offense. The following offenses are responsive lesser offenses to he crime of distribution of heroin:

Guilty of attempted distribution of heroin;
Guilty of possession of heroin;
Guilty of attempted possession of heroin;
Not guilty.

Attempted distribution of heroin: Attempted distribution of heroin is the attempt to commit the crime of distribution of heroin. Attempt, definition: A person has specific intent to commit a crime and who does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Mere preparation to commit a crime shall not be sufficient to constitute an attempt. An attempt is a separate but lesser grade of the intended crime. Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the defendant actually committed the completed offense with which he was charged.

I have already given you the definition of distribution of heroin and specific criminal intent. And you are to use these definitions in your deliberations on the lesser responsive offense.

Thus, in order to convict the defendant of attempted distribution of heroin you must find:

---

defendants knowingly and intentionally distributed or possessed with the intent to distribute a substance which was heroin.

State Rec., Vol. IV of V, trial transcript, p. 745.

- 14 -

       1) The defendant had a specific intent to commit the crime of distribution of heroin; and

       2) That the defendant did or omitted an act for the purpose of and tending directly toward the commission of the crime of distribution of heroin.[28]

Petitioner has failed to demonstrate that those instructions were in any way erroneous. Therefore, necessarily, he cannot demonstrate that the jury instructions were so egregiously erroneous as to rise to the level of a constitutional violation or so prejudicial as to render the trial itself fundamentally unfair. Accordingly, petitioner's claim should be rejected.

### Ineffective Assistance of Counsel

Petitioner claims that his counsel was ineffective. In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>See Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ...

---

[28] State Rec., Vol. IV of V, trial transcript, pp. 745-47.

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether the petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793. In order to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briesno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000). Therefore, petitioner must demonstrate a reasonable probability that if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. Briesno, 274 F.3d at 210.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner claims that his trial counsel was ineffective in failing to request an accurate jury charge regarding the law of "attempt" and in failing to request that "criminal conspiracy" be included as a responsive verdict. He claims that his appellate counsel was ineffective in failing to raise on appeal those alleged errors, as well as the alleged errors regarding the admission of the "other crimes" evidence and ineffective assistance of trial counsel.

Petitioner's first contention merits little consideration. As noted previously in this opinion, the jury was properly instructed on the law regarding "attempt." Accordingly, any challenge by defense counsel on that point would have been meritless. See United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's

failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Petitioner's second contention is equally meritless. He argues that his counsel should have requested that criminal conspiracy be included as a responsive verdict. Under Louisiana law, criminal conspiracy is not a responsive verdict for a charge of distribution of a controlled dangerous substance. La.C.Cr.P. art. 814(A)(48). Accordingly, counsel had no legal basis for requesting the proposed "responsive verdict."[29]

Similarly, petitioner's contention regarding appellate counsel fares no better. "Counsel is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996). As the United States Supreme Court has noted, "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client

---

[29] Additionally, petitioner can show no prejudice. The jury obviously rejected any suggestion that petitioner should not be held fully responsible for the crime as charged, in that it convicted him of distribution of heroin despite being given the option of convicting him of the lesser offense of attempted distribution of heroin. Therefore, there is absolutely no reason to believe that they would have elected to convict him of only criminal conspiracy.

- 18 -

because "a brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." Id. at 753.

In any event, as this Court has noted previously in this opinion, petitioner has failed to demonstrate that his underlying claims have any merit whatsoever. Therefore, petitioner has not demonstrated that his counsel performed deficiently when he failed to raise those claims on appeal.[30] Additionally, petitioner has not met his burden to prove resulting prejudice by establishing that he would have prevailed on appeal if his counsel had asserted those claims. Briesno, 274 F.3d at 210; see also Smith v. Robbins, 528 U.S. 259, 285 (2000).

Accordingly, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's ineffective assistance of counsel claims.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** petitioner's motion to stay these proceedings, Rec. Doc. 5, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the federal petition for *habeas corpus* relief filed by Johnny L. White be **DISMISSED WITH PREJUDICE**.

---

[30] Moreover, with respect to the contention that appellate counsel should have argued on appeal that trial counsel was ineffective, the Louisiana Supreme Court as held: "Generally, the preference for addressing claims of ineffective assistance of counsel is a post-conviction proceeding in the trial court, not on appeal." State v. Watson, 817 So.2d 81, 84 (La. 2002).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this eighth day of February, 2006.

_____
SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE